UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOARD OF TRUSTEES FOR THE
MICHIGAN CARPENTERS' COUNCIL
PENSION FUND,

        Plaintiff,        Case No. 1:12-cv-279

v.        HON. JANET T. NEFF

RAYMOND ACOUSTICAL, LLC,

        Defendant.
_____/

**OPINION**

This is an action to collect employer withdrawal liability under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1371 (ERISA), and, more specifically, under the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381–1461. Pending before the Court is Plaintiff's Motion for Summary Judgment (Dkt 65). Having conducted a Pre-Motion Conference in this matter and having fully considered the parties' written briefs, statement of undisputed material facts and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court determines that Plaintiff's motion is properly granted.

**I. BACKGROUND**

The Michigan Carpenters' Pension Fund ("the Fund") is an employee benefit plan that was formed by an employer association and an employee association for the purpose of receiving

contributions and paying benefits to employees (Statement of Material Facts [SMF][1] ¶ 1). The Fund is an employee pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a) of ERISA (*id.* ¶ 2). The Fund is comprised of individual trustees who are "fiduciaries" with respect to the plan, as defined by § 3(21)(A) of ERISA, 29 U.S.C. §1301(a)(10)(A) (*id.* ¶ 3). The trustees are collectively the "plan sponsor" within the meaning of Section 4001(a)(10)(A) of ERISA, 29 U.S.C. §1301(a)(10)(A) (*id.* ¶ 4). The Plan is administered in Eaton County, Michigan (*id.* ¶ 5).

Pursuant to 29 U.S.C. § 1381, a withdrawing employer is obligated to pay amounts commonly referred to as "withdrawal liability" as determined by Plaintiff pursuant to applicable statutory, administrative, and contractual provisions (SMF ¶ 9). "TIC" is the Fund's administrator (*id.* ¶ 10). Steven Homer is the administrative coordinator of the Fund's Employer Withdrawal Liability (EWL) program (*id.* ¶ 27). Homer is responsible for supervising all payroll audit work performed by TIC, including the monitoring of payroll contributions (*id.* ¶¶ 9, 11). TIC maintains contribution records as a necessary function of its normal business activity and the records are maintained in the normal course of business (*id.* ¶ 14).

The Fund adopted an arbitration policy that applies to the resolution of disputes (*id.* ¶ 22). The policy requires that arbitration must be initiated pursuant to the rules set forth by the American Arbitration Association (AAA) (*id.* ¶ 23). Section 7 of those rules describes the requirements for initiating arbitration (*id.* ¶ 34). The requirements include the submission of two copies of a notice of intent to arbitrate to the Regional AAA office and the payment of an administrative fee (*id.* ¶ 35).

---

[1]Unless otherwise noted, the Court has cited to the material facts stated by Plaintiff (Dkt 65-10), to which Defendant did not object.

Defendant Raymond Acoustical, LLC, is a Michigan Limited Liability Company with its principal place of business located at 2906 Nodular Drive, Saginaw, Michigan 48601 (SMF ¶ 7). Defendant Raymond Acoustical has participated in the Fund because it remitted contributions to the Funds (*id.* ¶ 12). As a result, the Fund has paid and continues to pay pension benefits to Defendant's employees (*id.* ¶ 13). Defendant was a participant in the Fund until, at the very earliest, July of 2006, when the collective bargaining agreement supporting Defendant's last contributions terminated (*id.* ¶ 17). By continuing to perform bargaining unit work, as described in the collective bargaining agreement, Defendant withdrew participation from the Plan and ceased to contribute to the Plan, thereby completely withdrawing from the Plan (*id.* ¶ 18).

Defendant received an assessment of withdrawal liability on June 4, 2010, after the Fund learned that Defendant performed bargaining unit work after withdrawing from the Fund (SMF ¶ 19). The assessed amount was $132,000.00 (*id.* ¶ 29). Homer reviewed the records maintained by TIC relating to Defendant's payment of contributions to the Fund, records that indicated that Defendant paid contributions to the Fund until at least March of 2004 (*id.* ¶¶ 15-16). (*id.* ¶ 16). Homer calculated interest on the assessment at the plan rate, which, as of March 1, 2014, totaled $43,810.58 (*id.* ¶¶ 30-31). Defendant failed to make any payments toward its withdrawal liability obligation and received a notice of failure to pay and default (*id.* ¶¶ 20, 33).

Defendant was required to initiate arbitration on or before December 28, 2010 (SMF ¶ 24). On December 29, 2010, the Fund received a letter from Dan Raymond, stating a "wish to seek arbitration proceedings" (*id.* ¶ 25; Ex. 5, Dkt 65-5). However, Defendant did not file any documents with the AAA Regional Office, nor did Defendant pay any administrative fee (*id.* ¶¶ 37-38). The

Fund notified Defendant that its purported arbitration demand was deficient because it was untimely and did not comply with Chapter 7 of the AAA rules (SMF ¶ 26).

On March 22, 2012, Plaintiff Board of Trustees filed this action on behalf of the Fund, its participants and beneficiaries, for the purpose of collecting withdrawal liability (SMF ¶ 6; Compl., Dkt 1). The Fund seeks entry of a judgment awarding withdrawal liability, interest and liquidated damages (SMF ¶ 28). Following a Pre-Motion Conference conducted by the Court in January 2014, Plaintiff filed the instant Motion for Summary Judgment (Dkt 65), to which Defendant filed a response (Dkt 66), and Plaintiff filed a reply (Dkt 67).

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of an issue to be litigated at trial. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## B. Discussion

Congress enacted ERISA in 1974 to ensure that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." *Findlay Truck Line, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 726 F.3d 738, 740 (6th Cir. 2013) (quoting *Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 375 (1980)). The MPPAA, which Congress adopted in 1980, protects employees who participate in multiemployer pension plans by requiring withdrawing employers to pay their share of "unfunded vested benefits." 29 U.S.C. §1381(b)(1).

Two principles of the MPPAA are relevant to resolution of Plaintiff's motion at bar. The first principle is that an employer withdrawing from a fund must make withdrawal liability payments. *Findlay*, 726 F.3d at 741. "Withdrawal liability" is calculated as the employer's proportionate share of the plan's unfunded, unvested benefits. 29 U.S.C. § 1381(a). The MPPAA provides that once a fund determines that an employer has withdrawn from its plan, it must notify the employer of the amount of the liability, prepare a schedule for liability payments, and demand payment in accordance with the schedule. 29 U.S.C. §§ 1382, 1399(b)(1).

The second principle of the MPPAA relevant here is that disputes over withdrawal liability between an employer and a fund must be arbitrated. *Findlay*, 726 F.3d at 742. The MPPAA provides detailed instructions for dispute resolution, in recognition that "the employer and the Plan may not always be in agreement as to the computation of withdrawal liability." *Id.* (quoting *Marvin Hayes Lines, Inc. v. Central States, Se. & Sw. Areas Pension Fund*, 814 F.2d 297, 299 (6th Cir. 1987)). If either party disputes the liability, the MPPAA requires that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under

sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1).

Accordingly, to prevail on a collection claim, a fund must show that: "(1) the Fund was a multiemployer pension plan and the Defendants were an employer for the purposes of ERISA," (2) "the Fund notified the Defendants of their assessed liability," and (3) "Defendants failed to timely initiate arbitration." *Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 597 (7th Cir. 2008) (citation omitted). *See, e.g., PACE Indus. Union-Mgmt. Pension Fund v. Troy Rubber Engraving Co.*, 805 F. Supp. 2d 451, 458 (M.D. Tenn. 2011) (applying three-part test from *Chicago Truck Drivers*).

Here, Plaintiff argues that Defendant failed to timely initiate arbitration inasmuch as Defendant's letter, arriving on December 29, 2010, was late (Dkt 65 at 4, citing *New York State Teamsters Conference Pension & Ret. Fund v. McNicholas Transp. Co.*, 848 F.2d 20, 23-24 (2d Cir. 1988) (where request for arbitration was made three days late, declining to disregard the "clear language of the statute" in order to relieve the company of the consequences of its failure to meet the time limitations imposed by the Act)). Plaintiff further argues that Defendant's letter lacked any resemblance to an AAA initiation of arbitration (*id.* at 4-5, citing *I.L.G.W.U. Nat. Ret. Fund v. Meredith Grey, Inc.*, 94 F. App'x 850, 852 (2d Cir. 2003)). Plaintiff points out that even to date, Defendant has not filed a notice of intent to arbitrate at the appropriate AAA Regional Office or paid an administrative fee (*id.* at 5). Plaintiff concludes that summary judgment should therefore enter against Defendant for the assessed amount of $132,000.00, plus interest and liquidated damages pursuant to 29 U.S.C. § 1451(b); 29 U.S.C. § 1145; and 29 U.S.C. § 1132(g)(2) (*id.* at 5-6).

In response, Defendant contends that whether it demanded arbitration "is in dispute for purposes of future proceedings" (Dkt 66 at 4). Defendant also contends that whether Plaintiff made a withdrawal assessment "as soon as practicable" is a "factual/legal issue in this case," where its withdrawal liability was not assessed until more than seven years after Defendant had withdrawn (*id.* at 4-5). According to Defendant, the doctrine of laches prohibits Plaintiff from moving forward with this action (*id.* at 5).

Defendant does not dispute that it withdrew from the Fund, the Fund provided and Defendant received notice of its liability and a demand for payment, Defendant's continuing failure to pay the liability, the terms of the Fund's arbitration policy, or its failure to file a notice of intent to arbitrate at the appropriate AAA Regional Office or pay an administrative fee. Accordingly, on the undisputed facts in this case, the Court concludes that Plaintiff is entitled to collect the entire withdrawal liability amount it assessed against Defendant, plus interest and liquidated damages.

Defendant's arguments do not compel a different conclusion. Defendant's mere assertion of a genuine issue of material fact surrounding its purported request to arbitrate does not alone create a genuine issue of material fact. As Plaintiff points out in reply, the initiation of arbitration in this case required more than "the mere expression of a desire to arbitrate" (Dkt 67 at 1). "Judges have often found ineffective employers' attempts to initiate arbitration when they failed to meet the precise requirements of the MPPAA or of the chosen arbitral forum." *PACE Indus.*, 805 F. Supp. 2d at 462 (and cases cited therein).

Although Defendant cites no legal authority in support of its remaining laches argument, the Court determines that the argument is unavailing. As Plaintiff points out, it is in fact too late for *Defendant* to attempt to avail itself of a defense that may or may not have been persuasive had

7

arbitration proceedings been timely or properly initiated (Pl. Reply, Dkt 67 at 1-2). "If an employer believes the trustees have failed to comply with their 'as soon as practicable' responsibility, the employer may assert that violation as a laches objection at an arbitration contesting the withdrawal liability assessment." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Calif.*, 522 U.S. 192, 205 (1997); *see PACE Indus.*, 805 F. Supp. 2d at 464 (M.D. Tenn. 2011) (opining that *Bay Area Laundry* has been interpreted to stand for the proposition that "a defense of laches must be addressed in arbitration as part of a challenge to withdrawal liability or else it is waived"). A contrary conclusion would elevate "one narrow statutory policy (favoring prompt collection) over the more general goal (collection) and overriding purpose (solvency) which animate and generate that narrow preference." *Joyce v. Clyde Sandoz Masonry*, 871 F.2d 1119, 1126 (D.C. Cir. 1989).

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt 65) is granted. An Order will be entered consistent with this Opinion. Further, as the Order resolves all pending claims in this case, a Judgment will also be entered.

DATED: October 17, 2014         /s/ Janet T. Neff
                                JANET T. NEFF
                                United States District Judge